# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MATTHEW M., | No. 2:17-CV-00290-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 18 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 18. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No. 18).

ORDER - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER - 3

gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

ORDER - 5

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff protectively filed an application for Title XVI supplemental security income benefits on July 28, 2014, alleging an amended disability onset date of the same date. Tr. 217-22, 45. The application was denied initially, Tr. 94-108, 124-27, and on reconsideration, Tr. 109-23, 134-44. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on August 9, 2016. Tr. 40-93. On September 16, 2016, the ALJ denied Plaintiff's claim. Tr. 19-39.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 28, 2014. Tr. 24. At step two, the ALJ found Plaintiff has the following severe impairments: cervical and lumbar degenerative disk disease, asthma, major depressive disorder, and attention deficit hyperactivity disorder. Tr. 24. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 25. The ALJ then concluded that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following limitations:

> [H]e can frequently climb ladders, ropes and scaffolds, and stoop and crouch; he can have only occasional exposure to pulmonary irritants; he is limited to

simple, repetitive, routine tasks with a reasoning level 2 or less; he needs a routine predictable work environment that requires no more than simple decision-making; he can have only occasional, superficial contact with the public and coworkers; he cannot work at a production-rate pace; and he is likely to miss work one day every 6-8 weeks on average.

Tr. 27.

At step four, the ALJ found Plaintiff cannot perform his past relevant work. Tr. 32. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as kitchen helper, laundry worker, and warehouse worker. Tr. 33. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from July 28, 2014 through September 16, 2016, the date of the ALJ's decision. Tr. 34.

On July 17, 2017, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims;

ORDER - 7

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ's RFC formulation is supported by substantial evidence.

ECF No. 14 at 9.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his subjective symptom claims. ECF No. 14 at 15-16. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina,* 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia,* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas,* 278 F.3d at 958-59.

The ALJ found that Plaintiff's medically determinable impairments could cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the severity

of his symptoms was not entirely consistent with the evidence in the record.  Tr. 28.

Here, Plaintiff challenges only the ALJ's conclusion that the objective medical evidence was inconsistent with Plaintiff's symptom complaints.  ECF No. 14 at 15-16.  Plaintiff failed to challenge the other five reasons the ALJ cited in support of his finding that Plaintiff's symptom complaints were not entirely credible, thus, any challenges are waived and the Court may decline to review them.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  However, upon review, the Court finds that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, to support his finding.  Tr.  28-30.

### 1.  Lack of Objective Medical Evidence

The ALJ found that Plaintiff's subjective complaints were not reasonably consistent with the medical evidence.  Tr. 28.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  Medical evidence is a relevant factor, however, in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).  Minimal

objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ noted that Plaintiff alleged that his low back and neck pain caused difficulty standing, sitting, or driving for prolonged periods, and that his asthma, neck, back, and hernia pain prevented him from working. Tr. 27. Here, the ALJ set out, in detail, the medical evidence contradicting Plaintiff's claims of disabling limitations. Tr. 27-28. For example, as to his physical impairments, the ALJ noted that Plaintiff's examinations resulted in generally normal or mild findings. Tr. 27-28; *see, e.g.*, Tr. 371 (Aug. 2014: musculoskeletal range of motion appropriate); Tr. 367-68 (Sept. 2014: reported no neck pain or tenderness and no muscle weakness); Tr. 375 (Oct. 2014: neck had good range of motion; normal gait); Tr. 351-55 (Oct. 2014: no radicular symptoms of numbness, pain or weakness in the upper extremities; no tenderness in neck or back; normal range of motion; and examination was described as "unremarkable"); Tr. 471-74 (March 2015: full range of motion in lumbar spine; musculoskeletal examination found mildly reduced range of motion in cervical spine; lumbar spine range of motion was pain free and full, gait was non-antalgic, ability to walk heel-toe normally, muscle tone normal); Tr. 481-82 (April 2015: denied numbness, weakness, or tingling in arms

or fingers; musculoskeletal examination showed mile pain with motion in cervical, thoracic, and lumber spine).

As to his mental impairments, the ALJ noted that the majority of Plaintiff's treatment providers observed normal psychological functioning. Tr. 28-29; *see, e.g.*, Tr. 371 (Aug. 2014: mood and affect appropriate, answered questions appropriately); Tr. 368 (Sept. 2014: mood and affect appropriate, answered questions appropriately); Tr. 375 (Oct. 2014: judgment and insight normal); Tr. 361-62 (Oct. 2014: MSE within normal limits); Tr. 380 (Oct. 2014: mood and affect appropriate); Tr. 471-76 (March 2015: normal memory, appropriate mood and affect, no mood swings, normal insight and judgment); Tr. 477-79 (April 2015: normal memory, appropriate mood and affect, normal insight and judgment); Tr. 481-84 (April 2015: normal memory, appropriate mood and affect, normal insight and judgment).

Plaintiff cites to objective imaging results and medical opinion evidence that Plaintiff contends undermines the ALJ's findings. ECF No. 14 at 16. However, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). Here, the ALJ reasonably concluded that these examination results and medical record do

ORDER - 12

not support Plaintiff's claims of disabling impairments. This reason combined with the others reasons offered by the ALJ provide a specific, clear, and convincing reason to discredit Plaintiff's symptom claims.

### 2. Minimal and Conservative Treatment

The ALJ found that Plaintiff's statements about his symptoms were inconsistent with the minimal and conservative treatment he received. Tr. 28-29. The medical treatment a Plaintiff seeks to relieve his symptoms is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 416.929(c)(3)(iv), (v). When a claimant receives only conservative or minimal treatment, it supports an adverse inference as to the claimant's credibility regarding the severity of her subjective symptoms. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). Moreover, noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. *Fair*, 885 F.2d at 603; *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

The ALJ observed that the record shows very little treatment for Plaintiff's impairments. Tr. 29. Specifically, the ALJ noted that Plaintiff sought treatment at Community Healthcare of Spokane (CHAS) at the behest of his SSI attorney and what little treatment he received was conservative in nature. Tr. 29 (citing Tr.

ORDER - 13

471).  As to his physical impairments, the ALJ noted that treatment for his spine, lower back pain, and headaches included physical therapy, manual treatment, ice/heat therapy, and recommended yoga.  Tr. 28-29 (citing Tr. 424-42, 485-87). The ALJ noted that after Plaintiff experienced improvements with physical therapy, he was instructed to engage in a home exercise program.  Tr. 28 (referring to Tr. 492).  The ALJ noted that Plaintiff's treatment for his asthma symptoms was minimal, involving the use of an inhaler two to four times per month and consumption of lemon grass tea.  Tr. 28 (citing Tr. 351, 463, 62).

As to his mental impairments, Plaintiff similarly received minimal treatment. Tr. 29.  The ALJ noted that prior to the alleged onset date, in May 2004, Plaintiff indicated that medication helped him think more clearly and concentrate.  Tr. 28 (citing Tr. 393); *see also* Tr. 321-23, 325, 329, 331.  However, he did not receive any mental health treatment in the form of medication or counseling from approximately 2007 to 2015.  Tr. 29.  His treatment providers routinely observed normal psychological functioning in their examinations.  Tr. 28-29 (citing Tr. 368 (Sept. 2014: oriented to time, place, and person, mood and affect appropriate, answered questions appropriately); Tr. 471-74 (March 2015: memory normal, mood and affect appropriate, and normal insight and judgment); Tr. 477-79 (April 2015: same)).

Moreover, the ALJ considered and rejected Plaintiff's explanations for failing to seek more treatment. Tr. 29. Plaintiff indicated he did not seek more treatment because he had no insurance and did not like the side effects of the mental health medications. Tr. 61-66, 75-75. The ALJ noted that although Plaintiff indicated he sought health care, he could not articulate what steps he took to seek health care. Tr. 29 (referring to Tr. 61-66, 74-75). The ALJ noted that Plaintiff indicated that he did not like drugs and does not have financial resources, but then admitted that he did not inquire regarding non-drug treatment options of his medical providers and in fact has insurance. Tr. 29 (referring to Tr. 61-66, 74-75). Here, Plaintiff's minimal and conservative treatment was a clear and convincing, and unchallenged, reason supported by substantial evidence for finding Plaintiff's symptom claims less than credible.

### 3. Improvement with Treatment and Medication

The ALJ found that Plaintiff's impairments improved with treatment and medication. Tr. 28. The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (2011). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2005); *see also Tommasetti*, 533 F.3d at 1040 (a favorable

response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ found that medication and treatment were effective at reducing Plaintiff's physical pain symptoms. The ALJ noted that Plaintiff's neck pain substantially improved with physical therapy. Tr. 28; *see* Tr. 443 (May 14, 2015: low back felt better with manual treatment, more mobility in neck); Tr. 437 (May 19, 2015: headaches less severe, increased neck mobility); Tr. 442 (May 19, 2015: able to perform household and outside chores with less pain); Tr. 285 (Aug. 15, 2015: physical therapy did "amazing things for his headaches." Now only has occasional headache that is handled with Tylenol); Tr. 490 (Oct.13, 2015: reported that his back, neck, and shoulders have improved and have less pain, more flexibility, can push with arms better).

As to his asthma, Plaintiff indicated his breathing had improved with the use of lemon grass tea. Tr. 28 (citing Tr. 463 (May 2016: "breathing has improved with lemon grass tea and is very happy with it")); *see also* Tr. 62.

As to his mental impairments, the ALJ noted that prior to his onset date, Plaintiff took medication, which substantially improved his ability to concentrate. Tr. 28; *see also* Tr. 321 (May 21, 2004: pleased with the effects of Strattera, able to think more clearly with less racing thoughts, able to concentrate and read a book, able to retain information); Tr. 322 (May 31, 2004: Strattera was helping him

ORDER - 16

concentrate quite a bit); Tr. 323 (Nov. 3, 2004: responding well to Strattera); Tr. 325 (Dec. 6, 2004: condition is improved, tolerating recent medication adjustment well); Tr. 329 (Jan. 4, 2005: tolerating medication well); Tr. 331 (Jan. 13, 2005: tolerating Strattera without problem). Although Plaintiff testified that he stopped taking mental health medications due to their side effects, Tr. 65-66, that contention is inconsistent with the medical records that he tolerated the medication well.

The ALJ reasonably interpreted the record as demonstrating that Plaintiff's conditions improved with treatment, which is a clear and convincing, and unchallenged reason to find his symptom complaints less credible.

### 4. Stopped Work for Reasons Unrelated to Impairments

The ALJ noted that Plaintiff stopped working for reasons unrelated to his impairments, which undermined his symptom claims. Tr. 29. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in evaluating a Plaintiff's symptom complaints. *See Tommasetti*, 533 F.3d at 1040; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The record supports the ALJ's conclusion. Here, Plaintiff reported during a psychological evaluation that he last worked as a machine operator in approximately 2006 or 2007, which employment ended due to the seasonal nature of the job and the employer having no more work for him. Tr. 359-60. This was a

ORDER - 17

clear and convincing, and unchallenged, reason to find Plaintiff's symptom complaints less than credible.

### 5. Poor Work History

The ALJ found Plaintiff's "work history similarly shows that [he] worked only sporadically before the alleged disability onset date, which raises a question as to whether [Plaintiff's] continuing unemployment is actually attributable to medical impairments." Tr. 29. Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that he is unable to work. *Thomas*, 278 F.3d at 959. In support of this finding, the ALJ cited to Plaintiff's earnings statements, which indicate Plaintiff reported approximately $5,000 in 2000 and 2005, and no income in 1994-99, 2001-04, and 2008-2015. Tr. 227, 230-31. His last work at SGA levels was in 1992. Tr. 230-31. The ALJ's conclusion is supported by substantial evidence. This was a clear and convincing, and unchallenged, reason to find Plaintiff's symptom complaints less than credible.

### 6. Daily Activities

The ALJ observed Plaintiff "can perform a full range of daily activities, which is inconsistent with the nature and severity of his subjective complaints." Tr. 29-30. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination.

ORDER - 18

*See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair*, 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ noted that Plaintiff reported mowing his yard and tending to his garden. Tr. 29 (citing Tr. 352). As to daily activities, Plaintiff is able to perform all personal care unassisted, grocery shop a few times per month, complete house hold chores, such as washing dishes, laundry, vacuuming, and dusting. Tr. 29 (citing Tr. 352). He is able to complete his activities of daily living in a reasonable amount of time, schedule his own appointments, has a driver's license and is able to drive. Tr. 29-30. He also reported building a greenhouse with his son. Tr. 30. The ALJ reasonably interpreted these activities as being inconsistent with Plaintiff's alleged disabling symptoms. This was a clear and

convincing, and unchallenged, reason for finding Plaintiff's symptom complaints less than credible.

In sum, the ALJ provided several clear and convincing reasons, supported by substantial evidence, for finding the Plaintiff's symptom complaints not entirely consistent with the evidence in the record.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly discounted the medical opinion of Thomas Genthe, Ph.D. ECF No. 14 at 12-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

Dr. Genthe conducted a consultative psychological evaluation in October 2014. Tr. 358-66. Dr. Genthe's diagnostic impression was major depressive disorder, mild with anxious distress, ADHD, cannabis use disorder. Tr. 365. Dr. Genthe opined that Plaintiff's abilities to understand and remember short, simple instructions; to understand and remember detailed instruction; to carry out short, simple instructions in a reasonable amount of time, to work with or near others, over a short period of time, without being districted by them; to keep track of time and finish work on time; to work with or near others, over a long period of time, without being distracted by them; to respond appropriately to changes in the work

setting; to sustain an ordinary routine without supervision; and to multi-task were poor. Tr. 365. Dr. Genthe concluded that it was unlikely that Plaintiff could function in a work setting until his psychological symptoms were managed more effectively. Tr. 365. The ALJ gave this assessment only partial weight. Tr. 31.

Because Dr. Genthe's opinions were contradicted by the medical expert, Dr. Toews, Tr. 46-57, and the state agency reviewers, Dr. Lewis, Tr. 98-105, and Dr. Eather, Tr. 114-20, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found that Dr. Genthe's opinions were incongruent with Plaintiff's objective examination as well as the opinion of the medical expert. Tr. 31. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Moreover, an ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data

and/or contradicted by the opinions of other examining medical sources.[1]

*Tommasetti*, 533 F.3d at 1041.

Here, the ALJ found that Dr. Genthe's opined limitations were inconsistent with Dr. Genthe's objective examination findings. Tr. 31. The ALJ observed that Plaintiff presented as generally open, cooperative and friendly, but somewhat restless. Tr. 30. In memory testing, Plaintiff could repeat words accurately, recall objects after a five-minute delay, recall remote information and he could spell the word "WORLD" forward but not backward. Tr. 30-31. Plaintiff accurately followed a three-step instruction. Tr. 31. His insight was good and his fund of knowledge was within normal limits Tr. 31. Plaintiff completed Trials A and B testing with no errors, falling into the unimpaired range. The ALJ specifically noted that the "only remarkable findings were poor memory scores." Tr. 31. Plaintiff's Wechsler memory testing was within borderline to extremely low range, with auditory, visual, immediate and delayed memory being extremely low. Tr. 31. Given the largely normal findings of the objective examination, with the

_____

[1] Dr. Toews is a reviewing medical expert and not an examining medical source. Tr. 46. However, the opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

ORDER - 23

exception of the Wechsler memory tests, the ALJ reasonably concluded that the objective examination was inconsistent with the severe limitations, especially those unrelated to memory, that Dr. Genthe opined.

Plaintiff faults the ALJ for relying on the hearing testimony of nonexamining psychological medical expert Jay Towes, Ed.D. in rejecting the opinion of Dr. Genthe, contending it was not supported by substantial evidence. ECF No. 14 at 13-14. Specifically, Plaintiff first asserts that Dr. Toews relied only on the Trail Making scores as being at odds with the Wechsler Memory scores in giving his opinion as to Plaintiff's diagnosis and RFC. *Id.* at 13. Plaintiff next asserts that Dr. Toews and the ALJ failed to consider other evidence in the record supporting the ADHD diagnosis, such psychological testing conducted by Dr. Arnold in 2004 and Plaintiff being prescribed Strattera. *Id.* at 13-14 (citing Tr. 389 (April 2004: MCMI-III highly suggestive of ADHD levels of inattention), Tr. 392 (prescription for Strattera)).

Plaintiff's contention lacks merit. Contrary to her assertion, Dr. Toews did not rely exclusively on the Trail Making score, but also relied on the psychiatric symptoms observed by physicians in the record, Tr. 47, which indicated normal insight and judgment, appeared as not having mood swings, and the status examination performed by Dr. Genthe. Tr. 50 ("[T[here was no indication on the status exam of any evidence impairments. He remembered four out of four words

ORDER - 24

after five minutes, and so forth.").  Moreover, in finding that Dr. Genthe's opinions were in conflict with the objective examination results, the ALJ relied on the opinions of the state agency reviewers, Dr. Lewis and Dr. Eather, in addition to Dr. Toews.  Tr. 31 (citing Tr. 98-105, 114-20, referring to Tr. 46-57).  Next, also contrary to Plaintiff's contentions, both Dr. Toews and the ALJ specifically addressed the prior medical records regarding mental health impairments and Plaintiff's use of Strattera.  Tr. 48-49 (Dr. Toews noted that some of Plaintiff's prior testing had indicated Plaintiff met some of the criteria for ADD and he had been prescribed Strattera, which had controlled his symptoms.); Tr. 28-29 (ALJ noted that Plaintiff had indicated that the medication had helped him think more clearly and concentrate and noting that the mental health records from prior to the adjudicative period were of limited relevance due to their age predating the onset date).

Here, the ALJ found that ADHD was a severe impairment, Tr. 24; noted that Plaintiff had received medication treatment for mental impairments, Tr. 28; and provided limitations in the RFC related to mental functioning, Tr. 27, 31-32. Plaintiff fails to articulate how a diagnosis of ADHD and the test results from 2004 support any more extreme limitations than provided for in the RFC.  ECF No. 14 at 14.  Significantly, Dr. Toews testified that even if the Weschler memory scores were valid, they would not support a finding that Plaintiff could not perform

unskilled work of the kind listed in the RFC. Tr. 55. The Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). The ALJ rationally concluded that the objective examination were inconsistent with the extreme limitations opined by Dr. Genthe. This was a specific and legitimate reason to discredit Dr. Genthe's opinion.

Second, the ALJ found that Dr. Genthe over-relied primarily on Plaintiff's subjective symptom reports. Tr. 37. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Fair*, 885 F.2d at 604. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008). Here, the ALJ reasonably concluded that absent citation to objective factors as a basis for these very limiting work restrictions, Dr. Genthe must have relied on Plaintiff's symptom complaints in assessing such extreme limitations. As noted above, the ALJ properly evaluated Plaintiff's symptom complaints. This was a specific and legitimate reason to reject Dr. Genthe's opinions.

**C. RFC**

Plaintiff challenges the ALJ's assessment of Plaintiff's RFC as inadequate, asserting that it failed to incorporate all of Plaintiff's limitations. ECF No. 14 at 15. However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims. *Id.* For reasons discussed throughout this decision, the ALJ's consideration of Plaintiff's symptom claims and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in assessing the RFC or finding Plaintiff capable of performing work existing in the national economy.

**CONCLUSION**

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful error. **IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 18) is **GRANTED**.

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT,** provide copies to counsel, and **CLOSE**

ORDER - 27

**THE FILE.**

     DATED August 20, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 28